1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL MICKEY FRADIUE,

11              Petitioner,              No. 2:00-cv-2209 MCE KJN P

12       vs.

13   CHERYL K. PLILER, et al.,

14              Respondents.        FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner proceeding without counsel with an application for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1998 conviction

19   for possession of heroin in a state prison with a true finding as to six prior convictions and a prior

20   prison term, and the sentence of twenty-five years to life in prison imposed thereon under

21   California's Three Strikes Law.

22              In the May 23, 2007 amended petition, petitioner claims that his rights under the

23   Fifth and Fourteenth Amendment were violated by the admission at trial of statements taken

24   from him without warning pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).  Petitioner also

25   claims trial counsel rendered ineffective assistance of counsel under the Sixth and Fourteenth

26   Amendments during the hearing on the motion to suppress petitioner's un-Mirandized

1

confession.  Finally, petitioner claims that his sentence violates the Eighth Amendment.

After review of the entire record, amended petition, answer, traverse and supplemental briefing, and for the reasons set forth below, the undersigned recommends that the petition be denied.

II.  Procedural History

1.  Petitioner appealed his conviction.  On March 27, 2000, the California Court of Appeal, Third Appellate District, affirmed the conviction in a reasoned opinion. (Respondents' Lodged Document ("LD") 3.)

2.  On May 2, 2000, petitioner filed a petition for review in the California Supreme Court.  (LD 4.)  The California Supreme Court denied the petition on July 12, 2000. (LD 5.)

3.  On October 11, 2000, petitioner filed the original petition in this court.  (Dkt. No. 1.)  Petitioner raised two claims: (a) that his Fifth Amendment right to remain silent and his Fourteenth Amendment right to due process were violated by the admission of statements taken from him in prison by a correctional officer investigating an alleged crime, in violation of Miranda; and (b) that his sentence violates the Eighth Amendment proscription against cruel and unusual punishment.  Id.  On December 13, 2000, respondents filed an answer.  On September 29, 2005, petitioner's motion to stay this case pending his return to state court to exhaust state court remedies was granted.

4.  On October 28, 2005, petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (LD 6.)  On February 21, 2007, the petition was denied by the California Supreme Court in a one-line opinion.  (LD 9.)

5.  On March 23, 2007, petitioner filed an amended petition herein.  (Dkt. No. 40.) Petitioner raised his initial two claims and added an ineffective assistance of counsel claim. Respondents filed an answer to the amended petition on August 20, 2007.  (Dkt. No. 32.) Petitioner filed a traverse on October 19, 2007.  (Dkt. No. 37.)

6. On April 18, 2008, the court granted in part petitioner's motion to take discovery and ordered respondent to lodge documents with the court. (Dkt. No. 44.)

7. On September 13, 2010, the court ordered supplemental briefing. (Dkt. No. 52.) Both parties filed supplemental briefs. (Dkt. Nos. 53 and 54.)

III. Facts[1]

On June 26, 1997, [petitioner] was an inmate at the California State Prison, Sacramento. That day, correctional officer David Prasinos searched a cell occupied by [petitioner] and another inmate and discovered, on the top shelf of the lower shelving unit, two cellophane balls containing a total of eight wrapped pieces of paper with a "brown tarry substance" on them. Each piece of paper contained .01 grams of heroin. Prasinos also found [petitioner's] state identification card and letters addressed to [petitioner] on the same shelving unit.

An internal administrative proceeding was initiated against [petitioner] for a prison infraction. In connection with such proceedings, the Department of Corrections assigns an "investigating employee" to gather information to be presented to a hearing officer. Typically, the investigating employee interviews the inmate to assist in obtaining witnesses and gather evidence on the defendant's behalf. However, the inmate has the option of rejecting the investigating employee assigned to the matter, in which case a new investigating employee is selected. (Only one such rejection is permitted.)

Correctional Officer Clarence Callahan was designated the investigating employee for the administrative proceedings initiated against [petitioner]. Callahan interviewed [petitioner] on July 23, 1997. At the time, [petitioner] was being housed in the administrative segregation section of the prison because of the charges against him.

Callahan came to [petitioner's] cell and informed [petitioner] he had been assigned as the investigating employee. Callahan remained outside the cell while [petitioner] either squatted or sat just inside the cell door. They communicated through a "food tray port." [Petitioner] was informed he had a right to reject Callahan, but [petitioner] declined to do so. [Petitioner] retrieved some paperwork regarding the administrative charges and read them for two or three minutes. Callahan then asked: "Were the drugs found by Officer Prasinos on the top shelf of the lower shelving unit

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Fradiue, No. C031508 (Mar. 24, 2000). (LD 3.)

3

Case 2:00-cv-02209-MCE-KJN   Document 55   Filed 11/30/10   Page 4 of 26

belonging to you?"  [Petitioner] responded:  "I admit that I had possession of the drug, but I was not trafficking in it."

In all, the interview lasted 25 to 30 minutes.  [Petitioner] did not identify any witnesses he wanted Callahan to interview in connection with the charges but asked that correctional officers Prasinos and Okray be present at the hearing in connection with [petitioner]'s personal property.[2]  [Petitioner]'s primary concern at the time was the protection of his property from theft by other inmates in the event of his transfer to a secure housing unit at either the Corcoran or Pelican Bay prisons.  [Petitioner] testified that the only reason he agreed to be interviewed by Callahan was to secure help in protecting his property.  He further testified the only reason he admitted possession of the drugs while denying trafficking was to avoid being sent to a secure housing facility.

[Petitioner] was charged in the present matter with two counts of being in possession of heroin in a state prison and six prior serious felony convictions and one prior prison term.  At the commencement of trial, he moved to suppress his confession because of Callahan's failure to advise [petitioner] of his *Miranda* rights.  A hearing was conducted and the motion was denied.  [Petitioner] was thereafter convicted by a jury on one of the two counts and the prior conviction charges were found true.

(LD 3 at 2-4.)

ANALYSIS

I.  Standards for a Writ of Habeas Corpus

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citation omitted). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be used to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

---

[2] [Petitioner] testified Prasinos was one of the officers who gathered his property from the cell.  Okray was not mentioned by [petitioner], but presumably was also involved in gathering [petitioner]'s property.

4

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (It is "not enough that a federal habeas court, in its independent review of the legal

1    question, is left with a 'firm conviction' that the state court was 'erroneous.'")

2         The court looks to the last reasoned state court decision as the basis for the state

3    court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

4    court reaches a decision on the merits, but provides no reasoning to support its conclusion, a

5    federal habeas court independently reviews the record to determine whether habeas corpus relief

6    is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

7    Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Independent review of the record is not de

8    novo review of the constitutional issue, but rather, the only method by which we can determine

9    whether a silent state court decision is objectively unreasonable."); accord Pirtle v. Morgan, 313

10   F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of

11   a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential

12   standard does not apply and a federal habeas court must review the claim de novo. Nulph v.

13   Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle, 313 F.3d at 1167.

14   II.  Petitioner's Claims

15        A.  Admission of Petitioner's Statements

16        Petitioner's first claim is that his rights under the Fifth and Fourteenth

17   Amendments were violated when the statement he gave to Officer Callahan was admitted at trial

18   despite the fact that Officer Callahan had not given petitioner any Miranda warnings prior to

19   taking the statement.  For the reasons set forth below, the undersigned concludes that while

20   petitioner's statement was admitted in violation of Miranda, the error was harmless and

21   petitioner's Miranda claim should be denied.

22        This claim was raised and rejected on petitioner's direct appeal from his

23   conviction.  (See LD 3, 4, and 5.)  The last reasoned rejection of the claim is the opinion of the

24   California Court of Appeal for the Third Appellate District.  (See LD 3 and 5.)

25        The state court of appeal relied on the decision of the United States Court of

26   Appeals for the Ninth Circuit in Cervantes v. Walker, 589 F.2d 424 (9th Cir. 1978), and

subsequent cases, in concluding that petitioner's constitutional rights had not been violated by the admission of his statements.  The court set forth the four factors[3] described in Cervantes, and, in applying them, made the following findings:

> Regarding the factors identified in *Cervantes*, [petitioner] was not even summoned for questioning.  Callahan came to [petitioner]'s cell.  [Petitioner]'s cellmate was also present at the time.  [Petitioner] was not handcuffed or otherwise restrained inside the cell.  Callahan remained outside during the interview and informed [petitioner] he was free to reject Callahan as the investigating employee.  Callahan testified that an inmate is not required to cooperate with an investigating employee, in which case the investigating employee conducts the investigation without the inmate's help.  The interview is for the purpose of assisting the inmate in preparing a defense to the administrative charges and the inmate is free to decline the interview and to terminate it at any time.  [Petitioner] acknowledged he was free to walk away from the door of the cell and stop talking to Callahan at any time.  Finally, [petitioner] was not confronted with any evidence of his guilt.

> . . . .  In our view, under the totality of the circumstances, no restraints were placed upon [petitioner] to coerce him into participating in the interrogation over and above those normally associated with his inmate status.  Hence, *Miranda* warnings were not required, and the trial court correctly rejected [petitioner]'s motion to suppress his confession.

(LD 3 at 8-9.)

To prevail on a Miranda claim, a petitioner seeking federal habeas relief must demonstrate that his statements were obtained in violation of the rules of custodial interrogation established by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966).  In Miranda, the Supreme Court held that a suspect subject to custodial interrogation has a right to consult with an attorney and have counsel present during questioning and that police must explain this right to the suspect before questioning begins.  384 U.S. at 469-73.  The advisements

---

[3]  The court in Cervantes identified the following four factors to consider in prison situations when analyzing Miranda claims:  (1) the language used to summon the prisoner; (2) the physical surroundings of the interrogation; (3) the extent to which prisoner is confronted with evidence of his guilt; and (4) the additional pressure exerted to detain him.  Cervantes, 589 F.2d at 428.  These factors were first described by the Ninth Circuit Court of Appeals in United States v. Luther, 521 F.2d 408, 410 (9th Cir. 1975) (per curiam).

1   required by Miranda arise from the Fifth Amendment right against self-incrimination, which

2   guarantees that any person taken into custody shall be informed of his important constitutional

3   rights and shall be given the opportunity knowingly and voluntarily to waive those rights before

4   being interrogated.  Id. at 444.

5          "An individual is 'in custody' at the point a reasonable person would feel that he

6   was not free to terminate the interrogation."  Bains v. Cambra, 204 F.3d 964, 972 (9th Cir. 2000)

7   (citing Thompson v. Keohane, 516 U.S. 99, 111-12 (1995)).  When an individual in custody

8   makes a statement, "custody alone is not sufficient to demonstrate involuntariness."  Medeiros v.

9   Shimoda, 889 F.2d 819, 825 (9th Cir. 1989) (citing United States v. Watson, 423 U.S. 411, 424

10  (1976)).  "'The fundamental import of the [Fifth Amendment] privilege while an individual is in

11  custody is not whether he is allowed to talk to the police without the benefit of warnings and

12  counsel, but whether he can be *interrogated*.'"  Medeiros, 889 F.2d at 825 (quoting Miranda, 384

13  U.S. at 478).  It is well established that not every question asked in a custodial setting constitutes

14  interrogation.  United States v. Mata-Abundiz, 717 F.2d 1277, 1278 (9th Cir. 1983) (citing

15  United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1981)); see also United States v. Foster,

16  227 F.3d 1096, 1102-03 (9th Cir. 2000).  Questions asked while in custody constitute

17  interrogation if, under all the circumstances involved in the case, the questions were reasonably

18  likely to elicit an incriminating response from the suspect.  Rhode Island v. Innis, 446 U.S. 291,

19  301 (1980); Foster, 227 F.3d at 1103;  United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1046

20  (9th Cir. 1990).  Spontaneous statements not made in response to interrogation are admissible.

21  Oregon v. Elstad, 470 U.S. 298, 309, 318 (1985); Innis, 446 U.S. at 300-01; Medeiros, 889 F.2d

22  at 824-25.

23         The primary question in the instant case is whether or not petitioner was in

24  custody when he was questioned by Officer Callahan.[4]  The law establishing when a prisoner is

25  _____

26         [4]  The parties do not dispute that petitioner was interrogated.  Certainly, Officer
    Callahan's question to petitioner – "Were the drugs found by Officer Prasinos . . . belonging to

1  "in custody" for purposes of Miranda is not altogether clear.  Petitioner first argues the California

2  Court of Appeal's decision is contrary to the United States Supreme Court's decision in Mathis

3  v. United States, 391 U.S. 1 (1968).  In Mathis, an IRS agent spoke to the defendant while he was

4  in state prison serving a sentence on unrelated charges.  During a discussion with the agent, the

5  defendant made statements incriminating him in tax fraud.  The Supreme Court held simply that

6  because Mathis was in prison, he was "in custody" for purposes of Miranda and entitled to

7  Miranda warnings.

8         The Supreme Court recently foreclosed petitioner's reading of Mathis.  In

9  Maryland v. Shatzer, 130 S.Ct. 1213 (2010), the Court specifically stated that "we have never

10  decided whether incarceration constitutes custody for Miranda purposes."  130 S.Ct. at 1224.

11  While the Court does not cite or explain its prior decision in Mathis, it goes on to make clear that

12  "lawful imprisonment imposed upon conviction of a crime does not create the coercive pressures

13  identified in Miranda."  Id.  Rather, the Court looked to further restraint upon a prisoner that

14  would indicate "custody" for Miranda purposes.  In fact, the Court remarked on a situation

15  similar to the present one: "When a prisoner is removed from the general prison population and

16  taken to a separate location for questioning, the duration of that separation is assuredly dependent

17  upon his interrogators."  Id. at 1225 n.8.

18         Relying on Shatzer, the Court of Appeals for the Sixth Circuit, in considering a

19  question similar to the one presented here, determined that a "bright line test" can now be

20  formulated:  "A Miranda warning must be given when an inmate is isolated from the general

21  prison population and interrogated about conduct occurring outside of the prison."  Fields v.

22  Howes, 617 F.3d 813, 822 (6th Cir. 2010).  While the court in Fields restricts this test to

23  interrogation regarding crimes outside the prison, there is no reason it should not apply equally to

24  conduct inside prison that could be the subject of criminal prosecution and that is not the subject

25

26  you?" – was "reasonably likely to elicit an incriminating response."  Innis, 446 U.S. at 301.

1    of the prisoner's incarceration.[5]

2            In this case, the following facts do not appear to be in dispute:  As a direct result

3    of finding drugs in petitioner's cell, petitioner was removed from that cell, placed in a holding

4    cell, strip searched, and placed in an administrative segregation ("ad seg") cell with another

5    inmate pending an investigation.  (RT 9:5, 24:28-25:2.)  Prisoners in ad seg face substantially

6    more restrictions on their movement than prisoners in the general population.  When being taken

7    to the small yard, they "are in handcuffs from the moment that you leave the cell."  (RT 5:25-26.)

8    Inmates in the general population are free to enter and exit their yard during certain periods in a

9    day.  (RT 5:25 - 6:11.)  Ad seg inmates are restricted to one hour a day in the small, separate

10   yard.  (RT 6:16-17.)  Ad seg inmates are not entitled to personal property such as clothing,

11   personal hygiene items, radios, and television sets.   (RT 17:25-19:5.)  Petitioner considered ad

12   seg to be worse than being in a security housing unit or "SHU."  (RT 26:13-17.)

13           Officer Callahan came to petitioner's cell door to interview him.  He remained

14   outside the cell and spoke to petitioner through the food tray port.  (RT 8:12.)  Petitioner's

15   cellmate was present during the interview.  (RT 9:24-26.)  Officer Callahan told petitioner he was

16   acting as a fact finder for the senior officer dealing with the drug violation.  (RT 11:12-16.)  He

17   also told petitioner that petitioner had the right to object to Officer Callahan being the

18   investigating officer for this violation.  (Id.)  Officer Callahan asked petitioner whether the drugs

19   found in his cell belonged to him.  (RT 13:1-3.)  Petitioner responded that he "had possession of

20   the drug, but I was not trafficking it."  (RT 13:5-6.)

21           When petitioner's situation is evaluated under Shatzer, several things are

22   important.  First, petitioner had been removed from the general population to a cell in a restricted

23

24

25           [5] In fact, in its discussion of Shatzer and the issue generally, the Sixth Circuit court refers
     to the subject of the interrogation as an "unrelated crime."  617 F.3d at 822.  It does not mention
26   a restriction to crimes occurring outside the prison until it states the "bright line test."  Id.

area.  Second, his freedoms were substantially limited.[6]  Third, Officer Callahan's interview with

petitioner had a direct relationship to petitioner's tenure in ad seg.  Petitioner resided in ad seg

pending his hearing on the violation Officer Callahan had come to question him about.  In fact,

Officer Callahan's testimony was used for a separate criminal prosecution of petitioner.  Under

Mathis and Shatzer, the undersigned concludes petitioner was in custody for purposes of

Miranda.  Cf. United States v. Marion, 708 F. Supp. 2d 1131 (D. Or. 2010) (questioning of

defendant when he was in the SHU constituted a custodial interrogation).  Of course, that finding

does not end the inquiry.  The next question is whether the California Court of Appeal's decision

was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

"For purposes of § 2254(d)(1), clearly established federal law consists of the

holdings of the Supreme Court at the time of the state court decision; however, 'circuit court

precedent may be 'persuasive' in determining what law is clearly established and whether a state

court applied that law unreasonably.'"  Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)

(quoting Pinholster v. Ayers, 590 F.3d 651, 662 (9th Cir. 2009) (en banc)).  For purposes of this

analysis, the undersigned assumes the four-part test set out by the Ninth Circuit Court of Appeals

in Cervantes represents a persuasive representation of clearly established federal law.[7]  Even in

that event, the California Court of Appeal failed to apply the test reasonably.  First, the court

---

[6]  However, as discussed below, petitioner concedes that he was free to walk away from the cell door and stop talking to Callahan at any time.  (RT 31:22-24.)

[7]  In Fields, the Sixth Circuit Court of Appeals held that because Cervantes addressed on-the-scene questioning, it had little precedential value in determining whether other questioning of a prisoner amounted to a custodial interrogation:  "Because Fields was removed from the general prison population for interrogation about an offense unrelated to the one for which he was incarcerated, Mathis is the applicable law. None of the cited appellate cases, all of which were decided subsequent to Mathis, erode its essential holding: Miranda warnings must be administered when law enforcement officers remove an inmate from the general prison population and interrogate him regarding criminal conduct that took place outside the jail or prison."  Fields, 617 F.3d at 819-20.  Relying on Fields, this court could find the California Court of Appeal violated the other prong of section 2254(d)(1) because its decision was "contrary to" clearly established federal law.

1   found petitioner "had not even been summoned." (LD 3 at 8.)  While that is true, it is also true

2   that Officer Callahan came to petitioner's cell specifically to talk with him about the drugs found

3   in his cell.  This is not a situation in which the inmate initiated the interview, as was the case in

4   United States v. Turner, 28 F.3d 981, 983-84 (9th Cir. 1994), upon which the Court of Appeal

5   relied.  (LD 3 at 7.)  Second, the court noted that petitioner "was not handcuffed or otherwise

6   restrained inside the cell." (Id.)  However, the Court of Appeals in Cervantes specifically stated

7   that custody for purposes of Miranda would result when there was "a change in the surroundings

8   of the prisoner which results in an added imposition on his freedom of movement." Cervantes,

9   589 F.2d at 428, quoted in United States v. Conley, 779 F.2d 970, 973 (4th Cir. 1985).  In the

10  present case, petitioner's freedom of movement was substantially changed.  After the drugs were

11  found in his cell, he was moved from the general population to a cell in the highly restrictive ad

12  seg unit.  As discussed above, his movement and possessions were extremely limited.  The

13  California Court of Appeal's conclusion that "no restraints were placed upon defendant to coerce

14  him into participating in the interrogation over and above those normally associated with his

15  inmate status" is incorrect.

16          The state court also noted that petitioner was free to decline the interview by

17  refusing to talk with Officer Callahan or by moving to the back of his cell. (LD 3 at 8-9.)  In fact,

18  petitioner testified at the suppression hearing that he understood he could have "quit talking" and

19  walked away from the door. (RT 31:22-24.)  While determining whether an interviewee felt free

20  to leave is a standard part of the custody inquiry in most cases, that determination cannot be

21  applied in the same way in the prison setting. Cervantes, 589 F.2d at 428.  As the court in

22  Cervantes recognized, an inmate is obviously not free to leave. Id.  The question is whether

23  some additional degree of restraint has been placed on the inmate. Id.  Petitioner was moved to

24  an ad seg cell and deprived of his personal property as a direct result of the drug charge.  Officer

25  Callahan was there to question him about that charge.  While petitioner, like any other person

26  questioned, could refuse to talk, the totality of the circumstances created a coercive environment

over and above that petitioner would have felt had he been in the general prison population. Petitioner may have known he did not have to talk, but he also knew his tenure in ad seg and the disposal of his personal property were directly related to Officer Callahan's questioning.

The California Court of Appeal next relied on the fact Officer Callahan told petitioner he could refuse to talk with him and would be assigned another investigating officer. The fact that petitioner could be confronted with a different investigating officer than the one then before him does not reduce the coercive nature of the questioning. Rather, it implies that petitioner does not have a choice but to be questioned by someone.[8]  The Court of Appeal then noted Officer Callahan's testimony about the purpose of the interview:  "The interview is for the purpose of assisting the inmate in preparing a defense to the administrative charges and the inmate is free to decline the interview and to terminate it at any time.  (LD 3 at 8.)  This point is only relevant, however, if it was communicated to petitioner.  It is not apparent from the record that petitioner was told this was the purpose of the interview.  Officer Callahan testified that he went to petitioner's cell with that purpose in mind, but did not testify that he told petitioner he was there to help him prepare a defense.[9]  (RT 11:1-9.)  The standard for determining custody under Miranda is an objective one.  Lowe v. United States, 407 F.2d 1391, 1397 (9th Cir. 1969). The officer's intent during that questioning is not relevant.  Id. at 1396.

////

---

[8]  In fact, that was the case.  Officer Callahan testified that petitioner was permitted to refuse the first, but not the second, officer assigned to question him.  (RT 23:17-28.)  It is not clear from the record whether petitioner was told he could refuse only the first officer assigned.

[9]  Petitioner testified that he understood investigating officers "sometimes" would do "certain things for you" like "check[ing] on a witness or something like that."  (RT 29:28-30:1.) The fact that petitioner understood an investigating officer might be helpful is a far cry from Officer Callahan's testimony that the entire purpose of his interview was to help petitioner. Moreover, to the extent petitioner understood that Officer Callahan was there to help him prepare a defense, it is not clear that this fact favors a finding that petitioner was not in custody.  On the one hand, that understanding may have made the questioning feel less coercive.  On the other hand, the situation could have been confusing.  Officer Callahan was not interviewing petitioner only to help him. Anything petitioner told Officer Callahan was not told to him in confidence, but could be, and was, used against petitioner to convict him of a crime.

1          The California Court of Appeal found that petitioner "was not confronted with

2   any evidence of his guilt." (LD 3 at 9.)  Again, this is not correct.  The reason petitioner was in

3   ad seg was because drugs were found in his cell.  Officer Callahan specifically asked petitioner

4   whether the drugs found in his cell belonged to him.  Certainly, evidence that drugs were found

5   in a prisoner's cell is "evidence of his guilt."  See United States v. Brobst, 558 F. 3d 982, 995

6   (9th Cir. 2009) (when officer told suspect he had found child pornography in one of the

7   bedrooms of his home, he was confronting suspect with evidence of his guilt for purposes of

8   Miranda).

9          Finally, it should be noted that the California Court of Appeal relied on cases that

10  were all factually distinguishable from petitioner's case.  In Cervantes, the Ninth Circuit Court of

11  Appeal found the petitioner was not in custody because the officer engaged in on-the-scene

12  questioning.  589 F.2d at 429.  The following cases cited by the Court of Appeal also involved

13  on-the-scene questioning: Garcia v. Singletary, 13 F.3d 1487, 1491-92 (11th Cir. 1994); Conley,

14  779 F.2d at 971-74; United States v. Scalf, 725 F.2d 1272, 1273, 1275-76 (10th Cir. 1984).  (LD

15  3 at 7.)  Miranda specifically carves out an exception for on-the-scene questioning.  See Fields,

16  617 F.3d at 819 n.3.  In United States v. Turner, 28 F.3d 981, 983-84 (9th Cir. 1994), the prisoner

17  initiated a telephone call with a postal inspector.  (See id.)  None of these cited cases involved the

18  sort of restrictions on a prisoner's freedoms or the sort of questioning that petitioner in the

19  present case confronted.  Here, the following set of circumstances compel a finding that

20  petitioner was in custody for purposes of Miranda: (1) petitioner was placed in an ad seg cell

21  because of the drug charge; (2) his freedoms were limited severely there; (3) he was questioned

22  about the drug charge while in the ad seg cell; (4) his tenure in that cell was directly related to the

23  subject of that questioning; (5) the drug charge could be prosecuted as a crime; (6) any of

24  petitioner's responses to the questioning could be used against him in a separate criminal

25  prosecution.  Accordingly, the undersigned finds the California Court of Appeal's decision that

26  petitioner was not in custody for purposes of Miranda was an unreasonable application of clearly

1  established federal law.

2          This finding of constitutional error only requires granting petitioner's writ,

3  however, if the error was not harmless.   Ghent v. Woodford, 279 F.3d 1121, 1126 (9th Cir.

4  2002).   On habeas review, that "question is whether the erroneously admitted evidence had a

5  'substantial and injurious effect or influence in determining the jury's verdict.'"   Id. at 1127

6  (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).   After reviewing the testimony at

7  trial, this court finds that admission of petitioner's confession, while certainly damaging, did not

8  have a substantial effect on the verdict because other evidence showed petitioner had control

9  over the drugs.   Officer Prasinos testified he found the two cellophane balls containing the heroin

10  on the top shelf of the lower shelving unit in petitioner's cell.   (RT 71:10-17.)   Officer Prasinos

11  found petitioner's state-issued identification next to the two cellophane balls.   (RT 72:24-25,

12  73:5-6.)   On the lower shelf in that same shelving unit, Officer Prasinos found letters addressed

13  to petitioner.   (RT 72:28, 73:1-2.)   Petitioner testified that the drugs did not belong to him.   (RT

14  247.)   However, he also testified that he had the right to use the drugs if he wanted to.   (RT

15  282:14-15, 284:19-27.)

16          The jury was instructed that petitioner was guilty of possession of the heroin if he

17  had the right to control it.   (RT 296-97.)   Because petitioner testified he had that right, he was

18  guilty of possession of the substance, regardless of Officer Callahan's testimony regarding

19  petitioner's statements to him.   Moreover, even without evidence of any statements or testimony

20  by petitioner, the evidence of the drugs being found in petitioner's cell next to his identification

21  and near his personal letters rendered the evidence of guilt extremely strong.   Accordingly, the

22  Miranda error was harmless under Brecht.   Petitioner's claim that his statements were admitted

23  in violation of his Fifth and Fourteenth Amendment rights should be denied.

24          B.  Ineffective Assistance of Counsel

25          Petitioner contends trial counsel rendered ineffective assistance of counsel under

26  the Sixth and Fourteenth Amendments during the hearing on the motion to suppress petitioner's

15

un-Mirandized confession.  (Dkt. No. 40 at 8-12.)

Respondent contends this claim is time-barred and does not relate back to the original petition filed herein.  For the reasons set forth below, the undesigned finds that although the claim would be time-barred, it relates back to a claim in the original timely petition filed herein.  Nevertheless, petitioner should not succeed on this claim because there is no reasonable likelihood he was prejudiced by any errors of counsel.

1.  The Statute of Limitations and Relation Back of the New Claims

One of the changes the AEDPA made to the habeas statutes was to add a statute of limitations for filing a habeas petition:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.

The "conclusion of direct review" is not the denial of review by the California Supreme Court, but ninety days thereafter, upon the expiration of the time in which to file a

1   petition for a writ of certiorari in the United States Supreme Court.  Tillema v. Long, 253 F.3d

2   494, 498 (9th Cir. 2001); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).  In this case, the

3   ninety-day period expired October 12, 2000.  The statute of limitations began running on October

4   13, 2000, and expired on October 13, 2001.  See Fed. R. Civ. P. 6(a) (excluding the day from

5   which the period begins to run from the calculation of the time).  The filing of the federal petition

6   did not toll the statute of limitations.  Duncan v. Walker, 533 U.S. 167, 181-82 (2001).

7   Accordingly, the ineffective assistance of counsel claim added to the amended petition, filed

8   March 23, 2007, is outside the statute of limitations unless it relates back to the claims in the

9   original petition.  Fed. R. Civ. P. 15 (c)(2).

10                  2.  Relation Back

11          In Mayle v. Felix, 545 U.S. 644 (2005), the Supreme Court examined the

12   interaction between the AEDPA statute of limitations and the relation back provisions of Rule

13   15(c)(2).  The original petition in that case contained a single Sixth Amendment claim based on

14   the admission of a witness's videotaped out-of-court statement.  After the statute of limitations

15   had run, petitioner Felix filed an amended petition, which added a Fifth Amendment claim

16   stemming from the admission of Felix's pre-trial statements to the police and a Sixth Amendment

17   claim of appellate counsel's ineffectiveness for failing to challenge the use of Felix's statements

18   on appeal.  Id. at 651-52.

19          To determine whether Felix's amended claims related back to the original petition,

20   the court focused on the "key words" of Rule 15(c)(2): "conduct, transaction, or occurrence," and

21   found that "relation back depends on the existence of a common 'core of operative facts' uniting

22   the original and newly asserted claims."  Id. at 656-57.  Felix's amended petition did not meet this

23   standard because it "targeted separate episodes, the pretrial police interrogation of witness

24   Williams in his original petition, his own interrogation at a different time and place in his

25   amended petition."  Id. at 660.

26          The Court also relied on Rule 2 of the Rules Governing § 2254 Proceedings,

which instructs a petitioner to specify all grounds for relief and state the facts supporting each ground.

> Under that Rule, Felix's Confrontation Clause claim would be pleaded discretely, as would his self-incrimination claim. Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an "occurrence."

Mayle, 545 U.S. at 661. In a footnote, the Court cited two proper examples of "relating back." The first involved an original challenge to the prosecution's failure to comply with its obligation to provide exculpatory materials to the defense and an amended petition raising the failure to provide a particular report. The Court noted that both pleadings "related to evidence obtained at the same time by the same police department." Id. at 664 n.7. The second involved an original petition challenging the trial court's admission of a witness' recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show the statements had been recanted; the Supreme Court quoted the lower court's recognition that relation back would be appropriate if the new claim was based on the same facts as the original pleading, but only changed the legal theory. Id.

The Ninth Circuit Court of Appeals examined the relation back issue in a number of opinions since Mayle. However, only two of those opinions are published and therefore have precedential value.[10] See Ninth Circuit Rule 36-3. In Hebner v. McGrath, 543 F.3d 1133 (9th Cir. 2008), the petitioner sought to amend his petition to add a claim that a jury instruction violated his due process rights because it allowed the jury to convict him of the present offense of

---

[10] Respondent cites an unpublished opinion of the Court of Appeals for the Ninth Circuit, Preston v. Harris, 216 Fed. Appx. 677 (9th Cir. Jan. 5, 2007). As stated in the text, because it is unpublished, that case has no precedential value. Even if it did, it is not, as respondent contends, on point. In Preston, the Court of Appeals held the tardy claim that counsel was ineffective for failing to advise the petitioner prior to the plea proceeding did not relate back to a timely claim that the trial court failed to advise him during the plea proceeding. In Preston, the court focused on the fact that the two claims involved different errors by different actors at different times. In the present case, while the actors are different, the timing is the same. Both claims in the present case involve whether or not petitioner was in custody when he made the incriminating statement.

1  rape "merely because of a preponderance of evidence that [he had] committed a similar offense."

2  543 F.3d at 1136.  The Court of Appeals found the new claim did not relate back to the

3  petitioner's original claim that the admission of evidence about the prior rape violated his due

4  process rights.  Id. at 1138-39.  The court held the claims were "'separated in time and type.'"  Id.

5  at 1138 (quoting Mayle, 545 U.S. at 657).  The jury instruction claim "was that the trial court's

6  instructions effectively lowered the burden of proof required to convict [petitioner] of the charged

7  offenses.  Hebner's original claim related to the evidence admitted at trial. . . ."  Id. at 1138.  The

8  court noted that had the petitioner pled both claims in the original petition, he would have been

9  required to state them separately since each would have been supported by "'separate congeries of

10  facts.'"  Id. at 1139 (quoting Mayle, 545 U.S. at 646).  Because the occurrences upon which each

11  claim was based were "discrete," "the admission of evidence during trial and the instructions

12  charged to the jury after the close of evidence," the claims "did not share a common core of

13  operative fact."  Id. at 1139.

14          More recently, in Valdovinos v. McGrath, 598 F.3d 568 (9th Cir. 2010), the Ninth

15  Circuit Court of Appeals found new claims related back to original claims.  The petitioner's

16  addition of two new items of evidence the prosecutor failed to disclose related back to his original

17  Brady claims.  598 F.3d at 575.  The court held that the claims were of the same type because they

18  pertained "to suppressed exculpatory evidence originating from materials from the police

19  investigation."  Id.  The petitioner's new allegations that his trial attorney failed to adequately

20  investigate certain exculpatory evidence related back to his original allegations of ineffective

21  assistance of counsel for failing to adequately investigate other exculpatory evidence.  Id. at 575-

22  76.  In each instance, the Court of Appeals focused on the fact that the original claims had

23  provided the government "'with the notice that the statutes of limitation were intended to

24  provide.'"  Id. at 575 (quoting Mandacina v. United States, 328 F.3d 995, 1001 (8th Cir. 2003)).

25  Thus, the important elements for determining whether a claim relates back are whether the new

26  claim relies on new "core facts" that differ in "time and type" from the facts underlying the

original claims and whether the original claims provided sufficient notice of the new claims.

Several courts, post-<u>Mayle</u>, have held that a new ineffective assistance of counsel claim relating to the subject of a timely claim relates back to the timely claim under Federal Rule of Civil Procedure 15(c)(2).  In <u>Gonzales v. Baca</u>, 2007 WL 1174698 at *7-8 (N.D. Cal. Apr. 19, 2007), the court held that a claim that counsel was ineffective for permitting improper jury instructions regarding other crimes evidence related back to the petitioner's original claim of trial court error regarding that jury instruction.  The court also held that a new claim that counsel was ineffective for failing to object to competency exam evidence related back to an original claim that admission of that competency exam evidence violated petitioner's constitutional rights.  While the court in <u>Gonzales</u> recognized that the new claims involved different actors (counsel versus trial court error) and therefore different legal theories, it held that the claims were otherwise "identical in time and type."  2007 WL 1174698 at *7 (citing <u>Mayle</u>, 545 U.S. at 664 n.7).

In <u>Chism v. Adams</u>, 2006 WL 3762109 (E.D. Cal. Dec. 20, 2006), <u>adopted</u>, 2007 WL 224959 (E.D. Cal. Jan. 26, 2007), the petitioner sought to raise new claims of ineffective assistance of counsel for counsel's error in assuring the petitioner he could appeal despite his no contest plea.  In his original, timely pleading, petitioner had alleged the trial court misled him into believing he retained his right to appeal after pleading guilty.  After examining the transcript of petitioner's plea, in which the trial court and defense counsel discussed petitioner's refusal to waive his appellate rights on the written plea agreement, the court held the new ineffective assistance of counsel claims related back to the original claims because the "claims flow from the same time in the proceedings and are based on related theories."  2006 WL 3762109 at *5.

In <u>Torres v. Graham</u>, 2007 WL 1233555 (E.D. N.Y. Apr. 20, 2007), the petitioner's timely claim challenged the trial court's failure to order a competency hearing.  Petitioner's new claim alleged trial counsel was ineffective for failing to investigate his psychiatric history and pursue a competency hearing.  The court found the new claim related back

because "the underlying facts are essentially the same as those outlined in the original petition and the proposed claim merely expands upon a previously-asserted claim."  2007 WL 1233555 at *4.

Courts have also held that claims that appellate counsel were ineffective for failing to raise a claim on appeal related back to the original claim.  In Pratt v. Upstate Corr. Facility, 413 F. Supp. 2d 228, 237 (W.D. N.Y. 2006), the court held that a claim that appellate counsel was ineffective for failing to raise trial counsel's conflict of interest related back to the claim that trial counsel was ineffective because he had a conflict of interest.  See also Scott v. Lafler, 2007 WL 2002731 (E.D. Mich. July 5, 2007) (same).  In Serrano v. Burge, 2005 WL 2063765 (S.D. N.Y. Aug. 22, 2005), adopted, 2005 WL 2170362 (S.D. N.Y. Sept. 8, 2005), the court found that a claim of ineffective assistance of appellate counsel for failure to raise evidentiary and prosecutorial misconduct claims related back to the timely claims of trial court error in admitting that evidence and of prosecutorial misconduct.  See also Pierre v. Ercole, 607 F. Supp. 2d 605, 608 (S.D.N.Y. Apr. 15, 2009) (same); Munoz v. Burge, 2010 WL 3394696, at *5-7 (E.D.N.Y. Aug. 20, 2010) (same); cf. United States v. Mock, 2006 WL 1168851, at *1 (E.D. Wash. Apr. 26, 2006) (ineffective assistance of counsel claim for failure to challenge sentencing factors in amended section 2255 motion to set aside a federal criminal sentence related back to original section 2255 motion's argument that sentencing factors unconstitutional); Knox v. United States, 2005 WL 1657127, at *3 n.3 (S.D. Ill. July 13, 2005) (same).

In the instant matter, petitioner argues, in claim two of the amended petition, that his trial counsel was ineffective for failing to develop facts during the suppression hearing that petitioner was "in custody" for purposes of Miranda when petitioner made the incriminating statement introduced at trial.  (Dkt. No. 40 at 8.)  Petitioner's timely claim one alleges that his Miranda rights were violated by admission of the statement.  The core facts common to both claims involve whether petitioner was in custody when petitioner made the statement.  Whether or not trial counsel was ineffective in his prosecution of the motion to suppress hinges directly on the facts underlying whether petitioner was, in fact, in custody at the time the statement was uttered.

1   While the actors are different in that the <u>Miranda</u> error addresses alleged error by the trial court

2   and the ineffective assistance of counsel claim focuses on the actions of the defense attorney, both

3   claims are intertwined with the facts surrounding the investigating employee's approach to

4   petitioner, the exchange between the employee and petitioner, and the circumstances surrounding

5   the statement made by petitioner.  Further, defense counsel's participation in the suppression

6   hearing had a direct impact on the trial court's ruling on the motion to suppress that statement,

7   suggesting a close relationship between counsel's and the court's actions.  The claims flow from

8   the same time in the proceedings (the events surrounding the making of the statement by

9   petitioner and the hearing on the motion to suppress in the trial court) and are based on related

10  theories.  Just as in <u>Gonzales</u>, <u>Chism</u>, and <u>Torres</u>, discussed above, the new ineffective assistance

11  of counsel  claim relates back to the original petition.

12              3.  <u>Merits - Sixth Amendment Claim</u>

13          Petitioner alleges his counsel was ineffective at the suppression hearing for failing

14  to develop facts showing he was in custody under <u>Miranda</u>.  The Sixth Amendment guarantees the

15  effective assistance of counsel.  The United States Supreme Court set forth the test for

16  demonstrating ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

17  To support a claim of ineffective assistance of counsel, a petitioner must first show that,

18  considering all the circumstances, counsel's performance fell below an objective standard of

19  reasonableness.  <u>Id</u>. at 687-88.  After a petitioner identifies the acts or omissions that are alleged

20  not to have been the result of reasonable professional judgment, the court must determine

21  whether, in light of all the circumstances, the identified acts or omissions were outside the wide

22  range of professionally competent assistance.  <u>Id</u>. at 690; <u>Wiggins v. Smith</u>, 539 U.S. 510, 521

23  (2003).  Second, a petitioner must establish that he was prejudiced by counsel's deficient

24  performance.  <u>Strickland</u>, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

25  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

26  been different."  <u>Id</u>. at 694.  A reasonable probability is "a probability sufficient to undermine

confidence in the outcome." Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

F.3d 972, 981 (9th Cir. 2000).

As described in the previous section, any error in admission of petitioner's

statement to Officer Callahan was harmless.  For the same reasons, any alleged attorney error at

the suppression hearing was not prejudicial.  There is no reasonable probability that the result of

petitioner's trial for possession of the heroin would have been different had his attorney better

developed facts showing petitioner was in custody.  Petitioner's claim of ineffective assistance of

counsel should also be denied.

C.  Eighth Amendment

Petitioner claims the imposition of a consecutive 25-year-to-life sentence for

possession of .08 grams of heroin in prison violates the prohibition against cruel and unusual

punishment under the Eighth Amendment.  For the reasons set forth below, the undersigned

recommends denial of this claim.

The state court initially held petitioner had waived this claim based on trial

counsel's failure to raise the issue in the trial court.  (LD 3 at 9.)  However, the state court went on

to reject this claim on the merits:

> [O]ur analysis "must take into account [petitioner's] recidivist
> behavior."  (People v. Gray (1998) 66 Cal.App.4th 973, 992.)  In
> this regard, [the court] cannot agree that the sentence is
> disproportionate to [petitioner's] past crimes and the risk he poses
> to society.  [Petitioner's] past offenses include two murders, an
> attempted murder and an assault with a firearm.  Despite this record
> and the significant terms of imprisonment imposed as a
> consequence, [petitioner] has once again proven he is incapable of
> living a life free of crime, even inside a prison.
>
> In Rummel v. Estelle (1980) 445 U.S. 263 . . ., the United States
> Supreme Court upheld a life sentence imposed under a Texas
> recidivist statute for a defendant convicted of obtaining $120.75 by
> false pretenses after incurring previous convictions for fraudulent
> use of a credit card and passing a forged check.  (Id. at p. 266 . . . .)
> "California appellate courts have adopted the reasoning of
> Rummel[] in upholding life sentences for third strike offenders."
> (People v. Martinez (1999) 71 Cal.App.4th 1502, 1505-1507, 1511-
> 1512 [25 years to life for possession of methamphetamine and

1
2
3
4

   attempting to deter a police officer, with prior convictions for
   assault with a deadly weapon, robbery and attempted robbery]; see
   also *People v. Barrera* (1999) 70 Cal.App.4th  541m 5440545 [25
   years to life for check forgery, with two prior robbery convictions];
   People v. Goodwin (1997) 59 Cal.App.4th 1084, 1086 [25 years to
   life for shoplifting and petty theft with a prior, with two prior
   burglaries].)

5
6
7

    [Petitioner's] sentence is neither extreme nor grossly
   disproportionate in light of his history of violent felonies.
   [Petitioner] has failed to establish a violation of either the state or
   federal Constitutions.

8

(LD 3 at 10-11.)

9     Respondent argues this claim is procedurally barred because the state court relied

10 upon trial counsel's failure to object at trial as an alternate ruling.  Petitioner argues that the

11 contemporaneous objection rule is not an independent and adequate state procedural ground and

12 therefore should not bar federal review.  The procedural default doctrine is complex.  Rather than

13 enter that quagmire, in the interests of judicial economy, the undersigned addresses the merits of

14 petitioner's claim.  See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (a district court may

15 address the merits without reaching procedural issues where the interests of judicial economy are

16 best served by doing so); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir.2002) ("Procedural

17 bar issues are not infrequently more complex than the merits issues presented by the appeal, so it

18 may well make sense in some instances to proceed to the merits if the result will be the same.").

19 As set forth below, petitioner should not succeed on this Eighth Amendment claim.

20     In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court made

21 clear that, in the context of an Eighth Amendment challenge to a prison sentence, the "only

22 relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of'

23 framework is the gross disproportionality principle, the precise contours of which are unclear,

24 applicable only in the 'exceedingly rare' and 'extreme' case."  538 U.S. at 73 (citing Harmelin v.

25 Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983); and Rummel v.

26 Estelle, 445 U.S. 263, 272 (1980)).  The Andrade Court concluded that two consecutive

1   25-years-to-life sentences with the possibility of parole, imposed under California's three-strikes

2   law following two petty theft convictions with priors, did not amount to cruel and unusual

3   punishment.  Id. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (sentence of 25 years to

4   life imposed for felony grand theft under California's three-strikes law did not violate the Eighth

5   Amendment).  "Outside the context of capital punishment, successful challenges to the

6   proportionality of particular sentences have been exceedingly rare."  Rummel, 445 U.S. at 272.

7          In Rummel, the United States Supreme Court upheld a sentence of life

8   imprisonment with the possibility of parole in approximately 12 years for a conviction for

9   obtaining money by false pretenses when the defendant had sustained two prior, low dollar

10  property crime convictions.  Here, petitioner was sentenced to 25 years to life in prison for

11  possession of heroin, and a finding that he had previously suffered convictions for violent offenses

12  including two murders, an attempted murder and an assault with a firearm.  In light of Rummel

13  and the controlling jurisprudence, this court cannot find that petitioner's sentence is grossly

14  disproportionate to his commitment offense.  The California Court of Appeal's decision was not

15  contrary to or an unreasonable application of federal law.  Petitioner's Eighth Amendment claim

16  should be rejected.

17         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

18  writ of habeas corpus be denied.  If petitioner files objections, he shall also address whether a

19  certificate of appealability should issue and, if so, why and as to which issues.  A certificate of

20  appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial

21  showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).

22         These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

24  one days after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  November 29, 2010



_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

frad2209.157